UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RCM TECHNOLOGIES, INC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>Defendants. | Civil Action No.  09-0650 (JDB) |

## MEMORANDUM OPINION

Before the Court is the motion for preliminary injunction filed by RCM Technologies, Inc., Cambridge Systems, Inc., and Global Recruitment Connections, LLC (collectively, "plaintiffs").  They seek to enjoin the U.S. Citizenship and Immigration Services ("CIS" or "defendants"), an agency within the Department of Homeland Security, from applying a new "policy" that allegedly requires foreign occupational and physical therapists to have master's degrees in order to obtain H-1B visas.  Because plaintiffs challenge the CIS "policy," rather than challenging a denial of a specific visa application, they are not likely to succeed on the merits of their claims.  Likewise, plaintiffs cannot succeed on the merits because the challenged "policy," even as described in plaintiffs' declarations, is not "binding," and hence does not constitute "final agency action" reviewable under the Administrative Procedure Act.  For the reasons explained below, then, plaintiffs' motion will be denied.

### BACKGROUND

Plaintiffs are in the business of recruiting and training foreign physical and occupational therapists, sponsoring them for H-1B visas, and then placing them with U.S. clients.  See Compl.

¶ 18.  H-1B visas are available for qualified foreign nationals working in "specialty occupations." Id. ¶ 17; see also 8 U.S.C. § 1184(i).  A cap applies to H-1B visas -- only 65,000 are permitted in any fiscal year, which begins on October 1.  Visa applications may be submitted six months before the fiscal year begins.  On April 1, 2009, plaintiffs filed over 100 visa applications for foreign therapists for fiscal year 2010, which begins October 1, 2009.  See id. ¶¶ 41, 43, 45.

In January 2009, RCM and Global Recruiting began to receive denials of previously-filed H-1B visa petitions because the therapists on whose behalf the petitions had been filed lacked master's degrees.  See id. ¶¶ 36-37.  According to plaintiffs, these denials are a result of a new CIS policy that is inconsistent with applicable statutes and regulations and that was never properly promulgated.  Plaintiffs have submitted a declaration from Donald Freiberg, an immigration attorney in California, who reports that at a public meeting on February 25, 2009, representatives from CIS's California office "represented that they received clearance from headquarters to require master's degree[s] for occupational and physical therapy positions for which new H-1B classification was sought."  See Pls. Rep. Ex. A at ¶ 5.

Plaintiffs filed suit in this Court on April 8, 2009 and filed a motion for a preliminary injunction the same day.  They seek to enjoin CIS's further use of this alleged policy of requiring master's degrees in adjudicating H-1B visas for physical and occupational therapists.  The motion is fully briefed and the Court held a motions hearing on May 4, 2009.

**STANDARD**

A preliminary injunction is an extraordinary and drastic remedy, one that should be granted only when the moving party, by a clear showing, carries the burden of persuasion.  See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997); see also Munaf v. Geren, 128 S.Ct. 2207,

2219 (2008). With that in mind, the standard for a preliminary injunction is well established. To prevail, the moving party must demonstrate (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable harm without injunctive relief, (3) that an injunction would not substantially harm other interested parties, and (4) that issuance of the injunction is in the public interest. Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004); Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998).

A substantial likelihood of success on the merits is vital. See Serono Labs., 158 F.3d at 1326; Hi-Tech Pharm. Co., Inc. v. FDA, 587 F. Supp. 2d 1, 7 (D.D.C. 2008). "Without any probability of prevailing on the merits, the Plaintiffs' purported injuries, no matter how compelling, do not justify preliminary injunctive relief." Am. Bankers Ass'n v. Nat'l Credit Union Admin., 38 F. Supp. 2d 114, 140 (D.D.C. 1999). Despite the importance of demonstrating a substantial likelihood of success on the merits, the four factors "are not considered in isolation from one another, and no one factor is necessarily dispositive as to whether preliminary injunctive relief is warranted. Rather, the factors 'interrelate on a sliding scale and must be balanced against each other.'" Morgan Stanley DW Inc. v. Rothe, 150 F. Supp. 2d 67, 72 (D.D.C. 2001) (citations omitted). "If the plaintiff makes a particularly weak showing on one factor, however, the other factors may not be enough to 'compensate.'" Id. at 73; see also Hunter v. FERC, 527 F. Supp. 2d 9, 14 (D.D.C. 2007); Dodd v. Fleming, 223 F. Supp. 2d 15, 20 (D.D.C. 2002).

## ANALYSIS

I.   **Substantial Likelihood of Success on the Merits**

The Court will focus its analysis on the first prong of the test for a preliminary injunction:

plaintiffs' likelihood of success on the merits. Defendants raise two threshold reasons why plaintiffs cannot ultimately succeed with their suit. First, defendants argue that plaintiffs' challenge to an alleged "policy" is not justiciable; plaintiffs must instead challenge individual denials of specific visa applications. Second, defendants contend that the "policy" at issue here does not constitute "final agency action" and hence is unreviewable under the Administrative Procedure Act. 5 U.S.C. § 704. Each of defendants' arguments has merit, and the Court addresses them in turn.

### A.   *Challenge to Discrete Agency Actions*

The first doctrine defendants invoke stems from a secondary holding in the Supreme Court's decision in Lujan v. National Wildlife Federation, 497 U.S. 871, 890 (1990). In Lujan, the Supreme Court rejected a challenge to the Bureau of Land Management's "land withdrawal review program," reasoning that "wholesale improvement" cannot be made by "court decree." Id. at 891. The Court held that under the APA, a plaintiff "must direct its attack against some particular 'agency action' that causes it harm." Id. Lujan did, as plaintiffs point out, involve a much broader challenge than the challenge plaintiffs mount here. See id. at 890 (likening plaintiffs' challenge in Lujan to the "'weapons procurement program' of the Department of Defense"). But since Lujan, several lower courts have held that even challenges to narrower "policies" are unreviewable under Lujan and the APA.

Defendants cite, for example, to Sierra Club v. Peterson, 228 F.3d 559 (5th Cir. 2000). There, the Fifth Circuit rejected a challenge to the U.S. Forest Service's policy regarding "even-aged timber management." The court framed the plaintiffs' suit as a challenge to "past, ongoing, and future timber sales approved by the Forest Service." Id. at 566. Although the challenged

policy was narrower than the challenged program in Lujan, the court held that Lujan applied. Hence, the plaintiffs were required to challenge discrete sales made pursuant to the allegedly unlawful policy. Id. And merely identifying specific sales made pursuant to that policy was not enough to make the case justiciable. Id. at 567.

Defendants also cite to Arden Wood, Inc. v. USCIS, 480 F. Supp. 2d 141 (D.D.C. 2007). In Arden Wood, the plaintiffs filed suit against CIS after R-1 visa applications they had filed for foreign religious workers were denied pursuant to an allegedly unlawful interpretation of the statute governing religious worker visas. Although the plaintiffs originally challenged the denial of a specific application, that application was granted by CIS after suit had been filed. Nonetheless, plaintiffs pressed their case, seeking declaratory and injunctive relief regarding CIS's "ongoing 'policy'" regarding religious worker visas. See id. at 146. The court dismissed the case on standing grounds. Id. at 147-48. At the same time, the court also invoked Lujan, holding on alternative grounds that the plaintiffs' challenge to CIS's "policy" was not justiciable. Id. at 149-50.

Whether cases like Peterson and Arden Wood have properly interpreted Lujan has not yet been squarely addressed by the D.C. Circuit. But dicta from D.C. Circuit opinions suggests that the court will look favorably on the approach taken by those cases. For example, in Cobell v. Norton, 240 F.3d 1081, 1095 (D.C. Cir. 2001), the court questioned a district court's authority to entertain a challenge to a government policy. The court noted that "[a]lthough the government does not press the issue," the district court's holding that a "policy" constitutes final agency action "is questionable. While a single step or measure is reviewable, an on-going program or policy is not, in itself, a 'final agency action' under the APA." Id. (citing Lujan, 497 U.S. at 890).

Plaintiffs respond in two ways. First, they point to cases in which courts entertained challenges to policies under the APA. For example, plaintiffs cite to Venetian Casino Resort, LLC v. EEOC, 409 F.3d 359 (D.C. Cir. 2005).[1] In Venetian Casino, an employer challenged an EEOC policy that allowed the release of the employer's confidential business information -- without notice to the employer -- to private parties seeking EEOC review. Unlike here -- and unlike cases such as Peterson and Arden Wood -- actions taken pursuant to that EEOC policy were not adjudicative decisions from which the aggrieved party could appeal. Moreover, because the challenged policy permitted disclosure of confidential information without notice to the employer, the aggrieved party would never know when confidential information had been disclosed. See id. at 365. Here, in contrast, plaintiffs receive notice of adjudicatory decisions made pursuant to CIS's alleged policy when visa applications are denied. Venetian Casino is thus of no help to plaintiffs.

Plaintiffs also argued at the motions hearing that challenging a specific denial of a visa application is impractical in the H-1B context. Denials of visa applications may be appealed to the Administrative Appeals Office, 8 C.F.R. § 103.4(a), and the AAO currently has a backlog of appeals that would delay a decision for a year or more. H-1B visas are applied for each year and are subject to a 65,000 annual cap. If a plaintiff were required to allow an administrative appeal to run its course before challenging a denial in federal court, then such applications might well be futile. But this concern is abated because, as defendants pointed out at the motions hearing, appeals to the AAO are discretionary. See 8 C.F.R. § 103.4(a)(1) (providing that cases "may" be

---

[1] In their reply brief, plaintiffs discuss Venetian Casino at a later stage of proceedings -- once the case returned to the court of appeals after a post-remand decision by the district court. See Venetian Casino Resort, LLC v. EEOC, 530 F.3d 925 (D.C. Cir. 2008).

certified to the AAO). "[A]n appeal to 'superior agency authority' is a prerequisite to judicial review only when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." Darby v. Cisneros, 509 U.S. 137, 153 (1993). Hence, plaintiffs need not pursue an AAO appeal before seeking judicial review of denied visa applications in federal court.

Lujan recognized that the "case-by-case approach" it required is "understandably frustrating" when "across-the-board protection" is sought by a plaintiff. 497 U.S. at 894. "But this is the traditional, and remains the normal, mode of operation of the courts." Id. Even if the facts of Lujan are distinguishable from the instant case, the approach Lujan requires demonstrates that plaintiffs have no likelihood of success on the merits of this case because they are challenging an alleged "policy," not the specific denial of a visa application made pursuant to that policy. Hence, plaintiffs' challenge is not justiciable.

B.   *Challenge to Final Agency Actions*

Defendants also argue that the policy plaintiffs challenge does not constitute "final agency action" and is therefore not reviewable under § 704 of the APA. As a threshold matter, the parties dispute whether a policy exists. Both parties have submitted affidavits or declarations to support their position that it does or does not exist. But at this early stage of the proceedings, the Court will assume that the policy is as plaintiffs' declarants allege it to be. Plaintiffs provide a declaration from Donald Freiberg, a California immigration attorney, who reports that at a public meeting on February 25, 2009, representatives from CIS's California office "represented that they received clearance from headquarters to require master's degree[s] for occupational and physical therapy positions for which new H-1B classification was sought." See Pls. Rep. Ex. A at ¶ 5.

The question, then, is whether this informal policy may be challenged under the APA.

In <u>Center for Auto Safety v. NHTSA</u>, 452 F.3d 798, 806 (D.C. Cir. 2006), the court held that a challenged action must "either (1) reflect 'final agency action,' 5 U.S.C. § 704, or (2) 'constitute a de facto rule or binding norm that could not properly be promulgated absent the notice-and-comment rulemaking required by § 553 of the APA." The test for "final agency action" comes from <u>Bennett v. Spear</u>, 520 U.S. 154, 177-78 (1997), and is as follows: "First, the action must mark the 'consummation' of the agency's decisionmaking process -- it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"

Both aspects of the second prong of the <u>Bennett</u> test are at issue here -- whether the CIS policy, as alleged, is one "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  Rights or obligations are "determined" by a policy when it is a "binding rule."  <u>See</u> <u>Ctr. for Auto Safety</u>, 452 F.3d at 808.  If a policy is "permissive" or if officials are "free to exercise their discretion" pursuant to the policy -- even if officials are "encouraged" to act a certain way -- then "rights or obligations" have not been determined.  <u>See id.</u> at 809; <u>see also</u> <u>CropLife America v. EPA</u>, 329 F.3d 876, 883 (D.C. Cir. 2003).  Similarly, "legal consequences will flow" from an agency action when the policy effects a "certain change in . . . legal obligations."  <u>See</u> <u>Nat'l Ass'n of Home Builders v. Norton</u>, 415 F.3d 8, 15 (D.C. Cir. 2005).  Practical consequences of a non-binding agency policy or de facto compliance with such a policy do not constitute <u>legal</u> consequences.  <u>See</u> <u>Ctr. for Auto Safety</u>, 452 F.3d at 811.

Here, CIS's alleged policy is not "binding" and hence does not constitute "final agency action" even under plaintiffs' description of the policy.  Mr. Freiberg declares that CIS

adjudicators now have "clearance . . . to require master's degree[s]" of therapists seeking H-1B visas.  Freiberg Decl. ¶ 5.  That stated policy -- if one actually exists -- appears to give adjudicators <u>permission</u> to require master's degrees.  It does not appear to <u>require</u> adjudicators to require master's degrees in all cases.  CIS's policy, then, is not binding and therefore does not constitute "final agency action" under either aspect of <u>Bennett</u>'s second prong.[2]  Rights and obligations have not been "determined."  And "legal consequences" do not flow from this policy, even if practical consequences do.  In this context, the "final agency action" requirement of § 704 of the APA achieves the same policy objective as the <u>Lujan</u> line of cases discussed above.  Courts stand ready to entertain appeals from specific, concrete agency adjudications.  But absent that, courts have neither the resources nor the expertise to superintend agency policy-making.

In sum, the challenge plaintiffs bring here is not justiciable.  It is a challenge to CIS's "policy," <u>see</u> Compl. at 1, which is non-justiciable under <u>Lujan</u> and its progeny.  And the Court lacks authority to review CIS's actions because plaintiffs' challenge is not to "final agency action" as required under <u>Bennett</u> and <u>Center for Auto Safety</u>.  Accordingly, and once again, plaintiffs have no likelihood of success on the merits.

## II.   Irreparable Harm, Substantial Harm to Other Interested Parties, and the Public Interest

A "conclusion that [plaintiffs are] not likely to succeed on the merits effectively decides the preliminary injunction issue."  <u>See</u> <u>Serono Labs., Inc. v. Shalala</u>, 158 F.3d 1313, 1326 (D.C.

---

[2] As previously noted, the Court has assumed the existence of the policy plaintiffs allege.  CIS has, however, stated that there is no such policy, that CIS continues to adjudicate H-1B petitions on a case-by-case basis without requiring a master's degree for all physical and occupational therapists, and that CIS is currently in the process of formulating a policy relating to adjudication of such petitions.  <u>See</u> Defs.' Suppl. Filing, Decl. of Barbara Velarde.  Those facts further undercut any contention that there is <u>final</u> agency action here.

Cir. 1998). Nonetheless, the Court will briefly address the remaining three factors here.

As for irreparable harm, plaintiffs fear a harm that is largely economic, and economic loss is not irreparable. See Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985). But, to be sure, when loss "threatens the very existence" of a plaintiffs' business, economic loss may be irreparable. See id. Here, plaintiffs allege that they filed more than 100 H-1B visa applications on behalf of therapists. See Compl. ¶¶ 41, 43, 45. Plaintiffs also aver that the very viability of their business is threatened by CIS's challenged policy. But in this, plaintiffs claims are carefully cabined. For example, Michael Saks, a RCM Technologies executive, declares that "[n]early 70% of the health care division's business comes from its placement of physical and occupational therapists." See Pls. Mem. Ex. A at ¶ 7. Mr. Saks does not claim that 70 percent of RCM's overall business comes from the placement of therapists; nor does he claim that 70 percent of RCM's health care division's business comes from the placement of foreign therapists. Although the Court appreciates that the economic harm realized by plaintiffs like RCM on account of CIS's alleged policy could be substantial, the Court is not persuaded that the economic harm will be so great as to threaten RCM's "very existence."[3]

The next factor, potential harm to defendant should the injunction be granted, is often a wash. "[O]ne party or the other will be injured whichever course is taken." Delaware & H. Ry. Co. v. United Transp. Union, 450 F.2d 603, 630 (D.C. Cir. 1971). Here, however, because the Court has determined that plaintiffs have no likelihood of ultimately succeeding on the merits, interim harm to defendants is unwarranted. This factor, then, counsels somewhat against

---

[3] Defendants also point out that plaintiffs' harm is not certain. The annual cap of 65,000 H-1B visas has not yet been met. Nor is the H-1B visa program plaintiffs' only option. H-2B visas, although less desirable than H-1B visas, may be available to foreign therapists.

granting a preliminary injunction.

Finally, the Court must consider the public interest. Both parties can claim that the public interest is better served if the Court rules in their favor on the preliminary injunction. Plaintiffs argue that there is a recognized shortage of physical and occupational therapists in the United States, so the public interest is harmed by excluding foreign therapists who are otherwise qualified. Defendants argue that an influx of less-educated foreign therapists will drive down standards and salaries for domestically-trained therapists. This factor, then, does not tip the balance in either direction.

## CONCLUSION

The first factor under the four-part preliminary injunction test -- substantial likelihood of success on the merits -- squarely favors defendants. This effectively ends the inquiry. None of the other three factors so favors plaintiffs as to warrant granting the extraordinary remedy of a preliminary injunction despite the low likelihood of success on the merits. Accordingly, plaintiffs' motion for a preliminary injunction will be denied. A separate order accompanies this opinion.

/s/
JOHN D. BATES
UNITED STATES DISTRICT COURT

Date: May 11, 2009